UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ELIZABETH A. ALBERT,

    Plaintiff,

    v.                        Civil Action 2:18-cv-907
                            Judge James L. Graham
                            Magistrate Judge Chelsey M. Vascura

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Elizabeth A. Albert ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for social security disability insurance benefits. This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 9), the Commissioner's Memorandum in Opposition (ECF No. 15), Plaintiff's Reply Memorandum (ECF No. 16), and the administrative record (ECF No. 8). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

### I.    BACKGROUND

Plaintiff filed her application for Title II Social Security Benefits on April 21, 2015, alleging that she had been disabled since March 26, 2015 (later amending the alleged onset date to April 23, 2015). (R. 273, 106.) On July 26, 2017, following administrative denials of Plaintiff's application initially and on reconsideration, a hearing was held before Administrative Law Judge Noceeba Southern (the "ALJ"). (*Id.* at 102–39.) Plaintiff, represented by counsel,

appeared and testified. Vocational expert Dr. Jerry Olsheski (the "VE") also appeared and testified at the hearing. On December 19, 2017, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at 71–84.) On June 22, 2018, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. 3–6.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

## II. THE ALJ'S DECISION

On December 19, 2017, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 71–84.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially gainful activity since April 23, 2015, the alleged onset date of Plaintiff's disability. (*Id.* at 74.) The ALJ found that Plaintiff has the severe impairments of lupus; fibromyalgia; degenerative disc disease of the cervical and lumbar spine; cellulitis; osteoarthritis of the bilateral knees; left shoulder rotator cuff tear; obesity; cancer (endometrial); bell's palsy; bursitis; edema; plantar fascia and heal spurs;

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

2

hypertension; IBS; GERD; and affective disorder. (*Id.*) She further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can stand/walk for four hours in an eight hour workday, and sit for six hours in an eight hour workday; frequently push or pull with the bilateral lower extremities; frequently use foot controls with the bilateral lower extremities; occasionally climb ramps and stairs; never climb ladders, ropes and scaffolds; frequently balance and stoop; avoid kneeling and crawling; occasionally crouch; frequently reach forward, laterally and overhead with the left upper extremity; avoid use of moving machinery or hazardous or heavy machinery; avoid exposure to unprotected heights; would be off task 7% of the day; must be allowed to prop feet up three to five inches on foot stool; should be able to tolerate simple, routine tasks; would need changes to be introduced slowly; limited to frequent superficial interaction with the public, co-workers, and supervisors; and should avoid high production strict quotas.

(*Id.* at 77.)

At step five of the sequential process, the ALJ, relying on the VE's testimony, found that considering Plaintiff's age, education, past work experience, and RFC, she can perform jobs that exist in significant numbers in the national economy. (*Id.* at 84.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. (*Id.*)

In her Statement of Errors (ECF No. 9), Plaintiff raises three contentions of error. First, she contends that the ALJ committed reversible error by failing to discuss the opinions of Plaintiff's treating certified registered nurse practitioner, Samantha Meek. Second, Plaintiff asserts that the ALJ committed reversible error by refusing to accept or consider evidence that Plaintiff identified five business days prior to the July 26, 2017 hearing. Her third contention of error asserts that the ALJ improperly evaluated the opinions of consultative examiner Dr. Steven Meyer.

3

## III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## IV. ANALYSIS

The Undersigned will consider each of Plaintiff's three contentions of error in turn.

### A. Any error by the ALJ in failing to discuss the opinions of Plaintiff's treating nurse practitioner was harmless.

Plaintiff argues that the ALJ erred by failing to discuss the medical source statement provided by her treating nurse practitioner, Samantha Meek. Ms. Meek was Plaintiff's primary care provider and saw Plaintiff every 2–3 months during 2015 and 2016. (R. 1044, 1051–70, 1074–83.) Ms. Meek completed a medical source statement that is undated, but bears a fax timestamp dated September 28, 2015. (R. 1060.) The medical source statement contains recommended exertional limitations "based on [Plaintiff's] functional capacity exam"; however, Plaintiff has not identified and the Undersigned has been unable to locate a report detailing any functional capacity examination completed by Ms. Meek. Rather, Ms. Meek's medical source statement reads as follows in its entirety:

> [Plaintiff] has the following restrictions for work based on her functional capacity exam:
> 
> - She can stand for 6 hours total though for no more than 30 minutes at a time.
> 
> - She can walk for 2 hours total though for no more than 30 minutes at a time.
> 
> - She can sit for 6 hours total though for no more than 30 minutes at a time.
> 
> - In an 8 hour work day she can lift up to 20 lbs occasionally, meaning 1/3 of the time or 2.5–3 hours a day.
> 
> - She can perform work that requires simples grasping, pushing and pulling, fine manipulation or the use of her feet in repetitive movements like for operating foot controls.
> 
> - She can bend, squat and climb steps occasionally.
> 
> - She cannot crawl or climb ladders
> 
> - She can reach above shoulder level.

> If you have any concerns or questions, please feel free to contact me at the above listed number.

(R. 1060.) Although many of Ms. Meek's recommendations are consistent with the ALJ's RFC, Ms. Meeks recommends more extreme limitations than the ALJ as to standing, sitting, walking, and bending.

Plaintiff is correct that the ALJ does not mention Ms. Meeks or her recommended limitations anywhere in the ALJ's decision. And though a nurse practitioner is not an "acceptable medical source" whose opinions must be given deference as a treating physician under 20 CFR § 404.1527(c)(2), a nurse practitioner is an "other source" whose opinion must be considered under Social Security Ruling 06-03p, 2006 WL 2329939 and 20 CFR § 404.1527(c). While SSR 06-03p notes that information from "other sources" cannot establish the existence of a medically determinable impairment, the information "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007) (quoting SSR 06-03p at *3). Thus,

> [a]lthough there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions for these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

*Cruse*, 502 F.3d at 541 (quoting SSR 06-03p at *6). The Ruling also instructs ALJs to evaluate opinion evidence from "other sources" using the same factors applicable to "acceptable medical sources"; namely:

- How long the source has known and how frequently the source has seen the individual;
- How consistent the opinion is with other evidence;

- The degree to which the source presents relevant evidence to support an opinion;

- How well the source explains the opinion;

- Whether the source has a specialty or area of expertise related to the individual's impairment(s); and

- Any other factors that tend to support or refute the opinion.

SSR 06-03p at 4–5 (citing factors set forth in 20 CFR § 404.1527(c)). Thus, the ALJ should have considered and explained the weight given to Ms. Meek's opinion, especially given her treating relationship with Plaintiff. *See Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) (reversing the Commissioner's decision in part because the ALJ failed to consider the opinion of the plaintiff's treating mental health counselor); *Harpest v. Comm'r of Soc. Sec. Admin.*, No. 2:13-CV-00925, 2015 WL 145085, at *2–3 (S.D. Ohio Jan. 12, 2015) (reversing the Commissioner's decision because the ALJ failed to consider a nurse practitioner's mental health assessment); *Duderstadt v. Colvin*, No. 3:13CV00302, 2014 WL 3508897, at *10–11 (S.D. Ohio July 15, 2014), *report and recommendation adopted sub nom. Duderstadt v. Comm'r of Soc. Sec.*, 2014 WL 4829498 (S.D. Ohio Sept. 29, 2014) (reversing the Commissioner's decision because the ALJ failed to consider a the opinion of the plaintiff's treating mental health counselor).

"It is an elemental principle of administrative law that agencies are bound to follow their own regulations." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004). Here, the ALJ failed to follow SSR 06-03p. Generally, however, federal courts review decisions of administrative agencies for harmless error. *Rabbers*, 582 F.3d at 654–55. Accordingly, "an agency's violation of its procedural rules will not result in reversible error absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the

agency's procedural lapses." *Connor v. United States Civil Serv. Comm'n,* 721 F.2d 1054, 1056 (6th Cir. 1983).

Here, any error by the ALJ in failing to consider Ms. Meek's recommended exertional limitations is ultimately harmless. Although an ALJ must consider other source opinions and generally should explain the weight given to them, "other-source opinions are not entitled to any special deference." *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014). Moreover, Ms. Meek does not offer any supporting evidence or explanation for her more extreme exertional limitations. Even for treating physicians, whose opinions are generally given deference, an ALJ may discount an opinion if it is not well-supported or explained. As the Sixth Circuit has held, an ALJ may properly assign little weight to opinions from treating sources "where the physician provided no explanation for the restrictions . . . and cited no supporting objective medical evidence." *Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 567 (6th Cir. 2016). This rule must apply *a fortiori* to "other sources" who are not entitled to the same deference as treating physicians.

As a result, even if the ALJ had appropriately considered Ms. Meek's opinion, the more extreme limitations recommended by Ms. Meek are unsupported. Any error by the ALJ in failing to consider Ms. Meek's opinion was therefore harmless.

**B.     The ALJ did not err in declining to consider evidence that Plaintiff untimely identified.**

Claimants are encouraged to submit supporting evidence at the time they request a hearing before an ALJ, and, in any case, must "make every effort to ensure that the administrative law judge receives all of the evidence and must inform [the ALJ] about or submit any written evidence, as required in § 404.1512, no later than 5 business days before the date of the scheduled hearing." 20 C.F.R. § 404.935(a). If a claimant does not meet this deadline, the

8

ALJ may decline to consider the evidence, unless the claimant meets certain criteria. *Id.* Specifically, in order to obtain consideration of untimely evidence, a claimant must demonstrate that the evidence was untimely identified or submitted because:

(1) An action of the Agency misled the claimant;

(2) The claimant had a physical, mental, educational, or linguistic limitation(s) that prevented him or her from informing the ALJ about or submitting the evidence earlier; or

(3) Some other unusual, unexpected, or unavoidable circumstance beyond the claimant's control prevented him or her from informing the ALJ about or submitting the evidence earlier. Examples include, but are not limited to:

   (i) The claimant was seriously ill, and the illness prevented him or her from contacting the ALJ in person, in writing, or through a friend, relative, or other person;

   (ii) There was a death or serious illness in the claimant's immediate family;

   (iii) Important records were destroyed or damaged by fire or other accidental cause; or

   (iv) The claimant actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing.

20 C.F.R. § 404.935(b).

Here, Plaintiff's counsel sent a letter to the ALJ identifying three sets of medical records that were not included with Plaintiff's request for hearing and which may not be available for submission prior to the hearing. (R. 432.) The letter is dated July 19, 2017, which is exactly five business days before the hearing took place on July 26, 2019. The ALJ did not note the precise date on which she received the letter, but stated in her decision that Plaintiff "submitted or informed the Administrative Law Judge about additional written evidence less than five business days before the scheduled hearing date." (*Id.* at 71.) The ALJ declined to admit the medical records identified in the July 26, 2019 letter because those records covered treatment obtained

9

more than two months prior to the hearing, and Plaintiff "failed to show that there was a compelling reason why the Agency was not, at the least, informed about this evidence more than five days prior to the hearing" as required by 20 CFR § 404.935. (*Id.* at 72.)

The Undersigned finds no error in the ALJ's refusal to consider the medical records identified in Plaintiff counsel's July 19, 2017 letter. Plaintiff argues that the ALJ was factually incorrect when she stated that she was informed of the evidence less than five business days prior to the July 26, 2017 hearing; however, Plaintiff's only evidence of the letter's timing is the date on its face. The letter, which was sent from Plaintiff's counsel's office in West Virginia, is addressed only to the ALJ's postal mailing address in Ohio and does not reflect a fax number, email address, or other method of electronic delivery. It is therefore extremely unlikely that the letter arrived at the ALJ's office five business days prior to the hearing—*i.e.*, on the same day it was sent. Accordingly, the Court accepts the ALJ's statement that she was not informed of the records in question by the deadline set forth in 20 C.F.R. § 404.935(a).

Moreover, Plaintiff has not attempted to make any showing of justification for untimely informing the ALJ of the evidence under 20 C.F.R. § 404.935(b). At most, Plaintiff argues that the ALJ should have expected further medical records from the providers in question because she had already provided previous treatment records from those same providers with her request for hearing. (Pl.'s Statement of Errors at 10, ECF No. 9.) This does not satisfy Plaintiff's obligation to submit the records in question to the ALJ or to inform the ALJ of the records' existence. Past treatment by a provider is no guarantee of future treatment by that same provider, and claimants cannot be deemed to have notified the ALJ of treatment that has not yet occurred simply by providing evidence from the same provider at an earlier time.

Finally, at the hearing on July 26, 2017, the ALJ asked Plaintiff's counsel whether the records included with the request for hearing completed the file, and Plaintiff's counsel answered in the affirmative. (R. 104.) The ALJ then stated, "[t]hose exhibits will be admitted and the record will now close." (*Id.*) No mention was made at the hearing of any further evidence that Plaintiff wished to have considered, and Plaintiff's counsel did not object to closing the record. Further, Plaintiff has not explained how the ALJ's decision would have differed if the evidence in question had been considered. The Undersigned therefore finds no error in the ALJ's refusal to consider the evidence that was untimely identified in Plaintiff counsel's July 19, 2017 letter.

**C.     The ALJ did not err in her evaluation of the consultative examiner's opinions.**

Plaintiff asserts that the ALJ improperly discounted the opinion of a consultative examiner, psychologist Steven Meyer, Ph.D. Dr. Meyer examined Plaintiff on one occasion and recommended the following non-exertional limitations: she can perform simple and complex routine instructions and tasks; she should not have strict production requirements; she should have some assistance available as needed at times of performing new tasks; she would be able to perform in a non-public work setting, with intermittent/occasional interactions with coworkers and supervisors; she should not be subject to "sustained demands" or multiple changes in routine; and, "[i]f her presentation and self-report today is consistent with collateral information from other sources, it is not expected that she would be able to withstand the stress of a full-time competitive work setting without increased psychological symptoms and deterioration." (R. 788–89.)

As with nurse practitioner Meek discussed *supra*, Dr. Meyer's opinion is not entitled to any particular deference. Consultative examiners' opinions must be meaningfully evaluated according to the factors set forth in 20 CFR § 404.1527(c), but an ALJ need not give "an exhaustive factor-by-factor analysis." *Kent v. Comm'r of Soc. Sec.*, 142 F. Supp. 3d 643, 650

(S.D. Ohio 2015) (quoting *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011)). Because a consultative examiner usually meets with the claimant only once, they usually do not have an on-going treatment relationship with the claimant to trigger the deference owed to treating physicians. *Andres v. Comm'r of Soc. Sec.*, 733 F. App'x 241, 245–46 (6th Cir. 2018) (the absence of an on-going treatment relationship means "the ALJ is entitled to give less weight to the consultative examiner's opinion") (citing *Staymate v. Comm'r of Soc. Sec.*, 681 F. App'x 462, 467 (2017)).

The ALJ incorporated some of Dr. Meyer's recommended limitations into the RFC based on similar recommendations by state agency examiners, but rejected Dr. Meyer's contention that Plaintiff could not withstand the stress of a full-time competitive work setting. (R. 82.) Notably, Plaintiff was working 20 hours per week at Goodwill at the time of Dr. Meyer's examination without significant stress and told Dr. Meyer she was limited to part-time work because "my body won't let me." (R. 785.) Plaintiff did not mention to Dr. Meyer any psychological factors limiting the number of hours she was able to work.

The ALJ also noted that Dr. Meyer's opinion was not consistent with the record, "which show[s] the claimant seeking just minimal treatment for the condition and having mostly unremarkable mental status evaluations." (R. 82.) Plaintiff argues that Dr. Meyer's opinion cannot be inconsistent with the record when the record contains very little as to her mental health impairments or treatment. (Pl.'s Statement of Errors at 12–13, ECF No. 9.) However, the absence of treatment for an impairment can itself shed light on that impairment's severity. *See Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389 (6th Cir. 2015) (concluding that ALJ reasonably discounted a doctor's opined limitations where, among other things, the claimant was receiving conservative treatment); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727 (6th Cir.

12

2013) (minimal or lack of treatment is valid reason to discount severity); *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 931 (6th Cir. 2007) ("The ALJ properly considered as relevant the fact that [the claimant's] medical records did not indicate that [claimant] received significant treatment . . . during the relevant time period."). The Undersigned therefore finds no error in the ALJ's evaluation of Dr. Meyer's opinion.

## V. DISPOSITION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. For the foregoing reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VI. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE